[No. 7316.    Decided June 14, 1909.]

HUGHES MANUFACTURING AND LUMBER COMPANY, *Plaintiff and Appellant*, v. PARKER-BELL LUMBER COMPANY, *Defendant and Appellant*.[1]

SALES—CONTRACT—COMPLETION—LATENT DEFECTS—PROOF OF CUSTOM. A contract for the sale of lumber, made by correspondence, cannot be objected to as incomplete in specific details of the specifications, where they were only latent defects which might be proved by parol, if the writings were ambiguous at all; and especially not where the specific points made are expressly covered by different letters.

SALES—CONTRACT—PRICE—PROOF OF CUSTOM. On the sale of lumber at a mill in Washington, tally and inspection to be made at point of delivery in California, whether the price fixed was net at the mill or gross at the point of delivery, would, in the absence of specific agreement, depend upon custom that could be proved by parol.

Cross-appeals from a judgment of the superior court for King county, Tallman, J., entered October 21, 1907, upon

[1]Reported in 102 Pac. 433.

findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on contract. Affirmed.

*John B. Hart* and *Walter S. Fulton*, for plaintiff.

*Shank & Smith*, for defendant.

Mount, J.—This action was brought by the plaintiff to recover from the defendant for failure to deliver a certain lot of lumber according to an alleged contract of sale. The case was tried to the court without a jury, and a judgment was rendered in favor of the plaintiff for $436.05. Both parties have appealed. We shall, therefore, designate the parties as plaintiff and defendant in this opinion.

The statement of facts was stricken on motion of the defendant, so that the only question left to be considered in the case is whether the complaint and bill of particulars, filed in connection therewith, allege a completed contract. The complaint alleged, in substance, that the plaintiff offered to purchase from the defendant 750,000 feet of lumber, board measure, at an agreed price of $14,211.45, f. o. b. ship's tackle, San Pedro Harbor, California, and that the offer was accepted by the defendant, and it agreed that tally and inspection of said lumber should be made at San Pedro; that the offer and acceptance were in writing, and that defendant refused to deliver the said lumber.

Defendant demanded a bill of particulars, and in response the plaintiff served and filed in the case a number of letters and telegrams which are claimed to constitute the written contract sued upon. It will not be necessary to set these letters out in full. We shall refer to the material parts only. On January 17, 1906, defendant, from Seattle, Washington, sent a telegram to the plaintiff at Los Angeles, California, saying:

"Can furnish, if accepted at once, 600 to 800,000 clear and merchantable, 60 days, standard sizes, clears $2 off list 3, merchantable $1 off."

On January 20 plaintiff wrote to defendant, saying:

"Replying to your letter of the 15th, we desire to say that we have this day wired you, 'Can pay three off No. 3 list selects and clears, $1 off merchantable,' . . ."

On January 20 the defendant sent a telegram to the plaintiff as follows:

"Send specifications immediately. If satisfactory will accept your price, 400,000 selects and clear, 300,000 merchantable. Answer."

On January 26, 1906, plaintiff wrote a letter to defendant, saying:

"We herewith inclose you memoranda for 750,000 feet, which is more merchantable than you requested."

This letter explained the use to be made of a part of the lumber, and inclosed an itemized list of the lumber, together with the price for each item, and also the total, which was $14,211.45. One item in the list was as follows: "30 M 2x3 —, 26 to 32 merchantable." On January 31, 1906, defendant sent a telegram to plaintiff, as follows:

"We accept order. Mill inspection and tally by Pacific Coast Lumber Inspection Bureau. Can load first cargo soon as boat arrives. Make 2x3 read 12 to 32 feet. Answer."

On February 3, 1906, defendant also wrote a letter to plaintiff, as follows:

"We just wired you that we have sent boat to Montesano for first cargo, and have been notified by mill today that second cargo will be ready within ten or fifteen days. The Montesano mill have been insisting on tally and inspection at the mill, and consequently we wired you to this effect. We hope you will see your way clear to have inspection done through the bureau here."

On February 8, 1906, plaintiff wrote a letter to defendant, as follows:

"Replying to your letter of February 3rd, relative to having the inspection and tally of the cargo done at shipping

point, we would say that it is customary to have it done at
San Pedro, as all of the other lumber we have bought and
the other lumber companies have done it that way. We feel
as though we are entitled to as much consideration as the
other purchasers. Referring to the matter of changing our
former specifications to make the 2x3's read 12 to 36 feet
in length, we called up our purchasers and they objected to
making the change. However, we believe if you would send
a small portion of the shorter lengths we could work them
through. If there was any serious objection we could put
them in our own yard and probably use them elsewhere."

On February 12, 1906, defendant wrote to plaintiff, say-
ing:

"We have your favor of the 8th inst., and note what you
say relative to inspection and tally, stating that it is cus-
tomary to have it done at San Pedro. . . . However, as
this order has been placed, we will allow it to be inspected at
San Pedro."

On March 1, evidently in answer to a telegram not in the
record, plaintiff wrote to defendant as follows:

"We are just in receipt of a telegram asking us to send
a boat or allow you to cancel the order. There seems to be
something wrong. It appears that the sender of this late
telegram is not familiar with the past correspondence. If
you will refer to the beginning, January 12, you will find
that you wired us asking if we were in the market for stock.
On January 17 you quoted prices. January 20 we made
offer. January 22 you wired us to send specifications. Jan-
uary 31 you wired us order accepted. On February 2 you
wire us to the effect that you have ordered boat to Monte-
sano for first cargo, which you acknowledged by letter dated
February 3. The telegram we received today confuses us,
and we hardly know what you mean."

The remainder of the letter, which is long, in effect refused
to send boat or cancel order, and explained the reasons there-
for. On March 5, 1906, defendant wrote to plaintiff:

"We have your letter of the 1st inst., and will say that
we do not wonder at your being nonplussed at the wire sent
you. We were compelled, however, to send this wire through

the owners of the mill. They asked it and we simply wired to satisfy them. We knew that you would not cancel the order, nor did we expect to have you. . . . We are pleased to inform you that we have secured one boat for part of the shipment, and will try to secure another one just as soon as it can be had, and hope to be able to ship your full order soon."

Defendant argues that there was no completed contract shown by these letters, for the reason that the following details were never agreed upon between the parties: (1) The time in which the shipment of the lumber was to be made was never agreed upon; (2) the details of the specifications as to the 30,000 board feet of lumber of the dimensions 2x3 was never determined upon by the parties; (3) it was never agreed as to where the tally of the cargo of lumber was to be made; (4) the designated price of the lumber was never fixed, it not being specified whether the price was that at the place from which the lumber was to be shipped or to which it was to be shipped; (5) no place of delivery whatever was determined upon by the parties. It would seem to be a sufficient answer to all these objections to say that they are latent defects which may be proved by parol; and, therefore, if the writings are ambiguous in all these respects, the contract would not be void. But, considering the questions *seriatim*, we find that the letter of January 7 states that the lumber 600 to 800,000 can be delivered in sixty days. But, even if no time was agreed upon, the law would fix a reasonable time. The letter of February 8, 1906, from the plaintiff to defendant, makes it clear that the plaintiff agreed to take 30,000 feet, 2x3 in length from 12 to 36 feet, as defendant desired. The letter of February 12, 1906, defendant to plaintiff, concedes that the tally and inspection were to be made at San Pedro. The price of the lumber was fixed at $14,211.45. Whether this was the net price at the mill or the gross price at the point of delivery, in the absence of a specific agreement, would depend upon custom, and might be proved as any other fact in the case, by parol evidence.

We are clear, for these reasons, that a binding contract was entered into, and the judgment must therefore be affirmed. Neither party shall recover costs in this court.

Rudkin,. C. J., Crow, Gose, Fullerton, Chadwick, and Dunbar, JJ., concur.